**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4160**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

     v.

DARRICK MICHAEL JACKSON, a/k/a Abdul-Jalil Mohammed,

              Defendant - Appellant.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.   Deborah K. Chasanow, District Judge.
(8:07-cr-00215-DKC-1)

Argued:  September 24, 2010          Decided:  October 29, 2010

Before WILKINSON, AGEE, and DAVIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Ebise Bayisa, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Greenbelt, Maryland, for Appellant.  David Ira Salem, OFFICE OF
THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.
**ON BRIEF:** James Wyda, Federal Public Defender, Baltimore,
Maryland, for Appellant.   Rod J. Rosenstein, United States
Attorney, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

## I.

Darrick Michael Jackson ("Jackson") appeals his conviction for making a false statement, in violation of 18 U.S.C. § 1001. On appeal, Jackson argues that the evidence was insufficient to sustain his conviction. For the reasons set forth below, we affirm the judgment of the district court.

## II.

Jackson was charged in a superseding indictment with two counts of making a false statement, in violation of 18 U.S.C. § 1001. Count One arose from Jackson's submission of U.S. Government Standard Form 85P, "Questionnaire for Public Trust Position," which he was required to submit in order to continue his employment at Andrews Air Force Base as a privately employed security guard.

Question 2 on the Form 85P asked: "Have you ever used or been known by another name?" (J.A. 116.) Jackson responded "No" to this question. (Id.) It is undisputed that Jackson did not disclose, in response to that question, an alias name that he used, Abdul-Jaleel Mohammad.[1]

---

[1] The indictment spelled Jackson's other name as "Abdul-Jalil Mohammed." Because the trial transcripts and the parties'
(Continued)

Count Two arose from Jackson's subsequent interview with Philip Kroop ("Kroop"), who was a federal investigator responsible for conducting interviews of persons seeking security positions related to the federal government. Kroop conducted a follow-up interview of Jackson regarding Jackson's Form 85P. It was during this interview that Jackson made the false statements charged in Count Two.

During the interview, according to Kroop's testimony at trial, Jackson was placed under oath. Kroop asked Jackson whether he had ever been known by another name and in response Jackson answered "no." To ensure that Jackson understood the question, Kroop rephrased and repeated the question in different ways. Specifically, Kroop testified that he asked versions of the following questions: "Do your friends, family members, associates or any other individuals know you by any other name? Have you ever used or been known by any other name by anybody? Is there any name that you use for any other purpose?" (J.A. 153.) Jackson answered "no" to each question. Additionally, Jackson did not ask Kroop any questions regarding his previous answer to Question 2 on Form 85P, nor did Jackson ask any

---

briefs use the spellings "Jaleel" and "Mohammad," however, we use the latter spellings herein.

questions about the meaning or proper interpretation of Question 2 or the questions Kroop asked of him.

The Government also presented evidence that Jackson had an email account with Yahoo, created in 1998, under the name "Jaleel99@yahoo.com." Between January 2000 and May 2007, Jackson sent or received over 400 emails to and from his Yahoo account. These included signing up for accounts at NBA.com and EA.com using the name Abdul-Jaleel Mohammad, not Jackson. It is further undisputed that Jackson had set up a Juno internet service account using the name "Abdul-Jaleel Mohammad," and that he also had an email account from Excite under the name "Jaleel99." Additionally, one email sent from Jackson's account to approximately 40 people included an essay with derogatory references to the United States government.[2]

---

[2] The essay was titled "Voting: Is It Halal or Haram?" (J.A. 238.) According to testimony at trial, "Halal" is an Islamic word meaning "permitted" and "Haram" is an Islamic word meaning "forbidden." (Id.) Part of the email included the following passage:

> But if you think about it, are you supposed to be voting in this non-Islamic[,] corrupt[,] satanic Government? A system made for the servitude of man to man, not Allah, God. A system run by thieves, sodomites, racist[s], drug dealers and those who indulge in mass destruction against humanity and nature.

(J.A. 239-40.)

At trial, the government's theory of the case was that Jackson purposefully did not provide his alias name because he did not want his email addresses or his connection to a controversial Mosque leader to be known to those investigating him for security purposes regarding his continued employment.

The Government bolstered its position by pointing to Jackson's post-arrest statement to an investigator almost one year after his OPM interview. Specifically, after the investigator told Jackson that he was under arrest for his failure to provide his other name on the Form 85P, Jackson nodded his head and stated, "[O]h, that's what this is about. That's what I thought." (J.A. 322.)

Jackson did not testify at trial. His defense focused largely on evidence that Jackson claimed showed he was not attempting to hide his views or his alias. Because he was not hiding his religious or political views, he argued, his failure to include his alias name could only be viewed as unintentional. Jackson pointed to evidence that, during his original application process, he sent his application from his yahoo account, communicated using his fax machine at his mosque, and listed associates from his mosque as personal references. He also relied on evidence that two of his co-workers (who were not federal employees) knew of his religious and political views and at least one of them knew he had another name.

5

After a three-day jury trial, the jury returned a not guilty verdict as to Count One, but found Jackson guilty as to Count Two. That is, the jury found him guilty of making a false statement during his interview with Kroop.

The district court sentenced Jackson to two years of probation, a fine of $2300, and 80 hours of community service. Jackson noted a timely appeal. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

III.

Jackson argues that there was insufficient evidence to support his conviction. He contends that the Government failed to present evidence that his omission of his alias, Abdul-Jaleel Mohammad, was knowing and willful, rather than a simple mistake based on a misunderstanding of the questions Kroop asked him. We disagree.

A conviction under 18 U.S.C. § 1001 requires the Government to prove: "(1) the defendant made a false statement to a governmental agency or concealed a fact from it or used a false document knowing it to be false, (2) the defendant acted 'knowingly or willfully,' and (3) the false statement or concealed fact was material to a matter within the jurisdiction of the agency." United States v. Ismail, 97 F.3d 50, 60 (4th

6

Cir. 1996) (quoting United States v. Arch Trading Co., 987 F.2d 1087, 1095 (4th Cir. 1993)).

Jackson contests only the second element of the crime, willfulness, and argues that his failure to disclose the additional name of Jaleel-Abdul Muhammad was simply an innocent mistake or done through inadvertence.

A jury's guilty verdict will be upheld if, viewing the evidence in the light most favorable to the Government, a rational factfinder could have found each element of the charged offense beyond a reasonable doubt. United States v. Madrigal-Valadez, 561 F.3d 370, 374 (4th Cir. 2009); United States v. Collins, 412 F.3d 515, 519 (4th Cir. 2005). An appellate court "may not weigh the evidence or review the credibility of the witnesses" because "[t]hose functions are reserved for the jury." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). This Court "also assume[s] that the jury resolved all contradictions in the testimony in favor of the government." United States v. Moye, 454 F.3d 390, 394 (4th Cir. 2006) (en banc) (citation omitted). In short, "[a] defendant challenging the sufficiency of the evidence faces a heavy burden." United States v. Foster, 507 F.3d 233, 245 (4th Cir. 2007).

We conclude that Jackson has not met that burden. Jackson's primary argument before this Court is that there was no evidence of intent because there was no evidence that Jackson

attempted to hide his alias name on any other occasion, and in fact disclosed his alias and his views to others, including two civilian co-workers. This argument, however, was made to the jury and obviously was rejected by the jury.

Jackson, both in his brief and during argument, essentially asks this Court to consider the same argument and reach a different conclusion than did the jury. That we cannot do. In this appeal, we review the jury's verdict only to determine whether substantial evidence supports it.

Having done so, we conclude there was more than sufficient evidence from which a jury could have found that Jackson's statements to Kroop during the interview violated 18 U.S.C. § 1001. Jackson's alias name was one he frequently used, not only in religious circles, but also as a name in establishing website accounts and in email correspondence. There was evidence before the jury that Jackson frequently used the alias name before, during, and after his interview with Kroop. Additionally, the jury was entitled to credit Kroop's testimony as to the version of questions he asked in the interview. Those questions were so broadly worded that Jackson's failure to even inquire whether he should include his other name is evidence the jury could have relied on to determine Jackson's statement was knowingly or willfully made.

In short, there is no "clear failure" by the prosecution here.  See Foster, 507 F.3d at 244-45.  The jury's verdict was supported by substantial evidence.[3]

IV.

For the aforementioned reasons, we conclude that there was sufficient evidence to support the jury's verdict and therefore affirm Jackson's conviction and the judgment of the district court.

AFFIRMED

---

[3] Jackson also refers to the jury's verdict of acquittal on Count One as "inconsistent" with its guilty verdict as to Count Two. (Appellant's Br. at 19.)  We reject that argument both because Jackson failed to raise it as a separate issue and because it is without merit.  In particular, we do not find any inherent inconsistency between the jury's verdicts on the two counts.  Additionally, even if there were some inconsistency, "it has long been settled that inconsistent jury verdicts do not call into question the validity or legitimacy of the resulting guilty verdicts." See United States v. Green, 599 F.3d 360, 369 (4th Cir. 2010) (citations omitted); see also United States v. Perry, 335 F.3d 316, 322 (4th Cir. 2003) ("[A] defendant cannot challenge his conviction merely because it is inconsistent with a jury's verdict of acquittal on another count.").